STATE FARM MUTUAL AUTOMOBILE INSURANCE COM-
PANY, PLAINTIFF-APPELLANT, v. TRAVELERS IN-
SURANCE COMPANY, A CORPORATION AUTHORIZED
TO DO BUSINESS IN NEW JERSEY, AND GENERAL
ACCIDENT INSURANCE COMPANY, A CORPORATION
AUTHORIZED TO DO BUSINESS IN NEW JERSEY, DE-
FENDANTS-RESPONDENTS.

Argued September 28, 1970—Decided November 9, 1970.

*Mr. Michael J. Cernigliaro* argued the cause for plaintiff-appellant (*Messrs. Campbell, Mangini, Foley, Lee & Murphy,* attorneys).

*Mr. Paul E. Anderson* argued the cause for defendant-respondent, Travelers Insurance Company (*Messrs. Kovacs, Anderson, Horowitz, Rader & Dato,* attorneys).

*Mr. Robert J. C. McCoid* argued the cause for defendant-respondent, General Accident Insurance Company (*Messrs. Schneider & Morgan,* attorneys).

PER CURIAM. The sole question before us concerns the coverage provided by the omnibus clause of an automobile liability policy issued by Travelers Insurance Company (Travelers) to Mrs. Viola E. Heinrich.

On March 22, 1966, Edward Olsen, while operating the automobile of Mrs. Heinrich, was involved in an accident with Marianna Sixt, Jacob Sixt and Robert Sandusky. The Sixts instituted a suit against Sandusky, Mrs. Heinrich and Olsen. Mrs. Heinrich then filed a third-party-complaint against Olsen's employer, DeAngelis Motors Co. (DeAngelis), a Cadillac automobile agency. At the time of the accident, Mrs. Heinrich was insured under a policy of Travelers; DeAngelis was insured by a policy of General Accident Insurance Company (General); Olsen owned an automobile insured by the plaintiff, State Farm Mutual Insurance Company (State Farm); and Sandusky was insured by Allstate Insurance Company (Allstate). At the trial the suit between the Sixts and the four defendants was settled for $40,000 by Allstate. At that time the above named insurance companies agreed that $20,000 of the $40,000 would be paid by Allstate on behalf of its insured Sandusky, and that $20,000 would be paid by Allstate on behalf of the other companies with the understanding that an action for declaratory judgment would be instituted to determine the liability of one or some combination of the remaining three companies.

Thereafter, State Farm, Olsen's insurer, instituted this action. The defendants were Travelers, the insurer of Mrs. Heinrich, and General, the insurer of DeAngelis.

The Heinrich liability policy contained the standard omnibus clause extending coverage to

"any other person using such automobile with the permission of the named insured, provided his actual operation * * * is within the scope of such permission."

The DeAngelis policy contained a like provision.

The trial court entered judgments for both defendants, holding that at the time of the accident Olsen had no permission from either Mrs. Heinrich or DeAngelis to operate the automobile. On plaintiff's appeal, the Appellate Division affirmed in an unreported opinion. We granted the plaintiff's petition for certification. 55 N. J. 600 (1970).

At the argument on this appeal all parties agreed that General is not liable under its policy insuring DeAngelis, that there is no other applicable provision of the Travelers' policy, and that there is no question of primary or excess insurance. Consequently, the only question before us is whether the quoted omnibus clause in Travelers' policy covered Olsen at the time of the accident. If Travelers' policy did cover Olsen, his own insurer, State Farm, is free from liability and Travelers is obligated to pay the $20,000 owed to Allstate.

The essential facts are not in dispute. Olsen was a salesman for DeAngelis and in such capacity sold a new Cadillac to Mrs. Heinrich. The car was delivered to her in February 1966. In March of that year Mrs. Heinrich telephoned Olsen that she was going on a vacation and that during her absence she wanted the car serviced and a condition causing a squeak in the rear wheel remedied. She said that her daughter or son-in-law would bring the car in since they were going to use it for a week after she left. She expected the car to be returned immediately upon the completion of service. She testified that Olsen said he would "see to everything for you." She maintained, however, that she never gave Olsen permission to operate the car and that he never suggested he was going to operate the car. Later, Mrs. Heinrich's daughter telephoned Olsen and said that either she or her

husband would bring the car in for servicing. She also mentioned the squeak in the wheel. Olsen testified that he told her he would personally operate the car, drive it to and from his home about twelve miles away, and even test it on the Turnpike at 60 m.p.h. to see that it was functioning properly. Since Mrs. Heinrich's daughter did not testify at the trial, these assertions went unchallenged. On Thursday, March 17 or Friday, March 18, the automobile was delivered to Olsen at DeAngelis Motors by Mrs. Heinrich's son-in-law. He left a sheet of instructions which were essentially the same as those previously given, but which requested the car not be returned until Saturday, April 2. It was established that the repairs on the car were completed on March 18.

The collision out of which this action arose occurred early in the morning of March 22. Olsen had attended a union organization meeting with two other DeAngelis salesmen whom he had driven to the meeting in the Heinrich car. After the meeting, he brought the men back to DeAngelis and on his way home from there, he was involved in the accident.

The question of whether Olsen was an additional insured within the policy issued by Travelers to Mrs. Heinrich depends upon the construction to be given the omnibus clause in that policy. The plaintiff relies on *Matits v. Nationwide Mutual Ins. Co.*, 33 *N. J.* 488 (1960), where we adopted the "initial permission rule." Subsequently we adhered to the rule in *Small v. Schunke*, 42 *N. J.* 407 (1964) and *Selected Risks Insurance Co. v. Zullo*, 48 *N. J.* 362 (1966). Under the rule, once permission is given by a named insured, any deviations from the scope of that permission in time, place, or purpose are irrelevant. See *Odolecki v. Hartford Accident & Indemnity Co.*, 55 *N. J.* 542, 548 (1970) ; *Butler v. Bonner & Barnewall, Inc.*, 56 *N. J.* 567 (1970). Since it was undenied that the daughter, acting with Mrs. Heinrich's authority, acquiesced in Olsen's use of the car, any subsequent use thereof for his own purposes would still be within the initial permission. Once the permission was given, the scope of that permission was unrestrictable.

Travelers argues that the permissive use terminated after the car was repaired. The trial court agreed holding that Olsen had a "limited permission, not a blanket permission." But this reasoning does not comport with the philosophy of *Matits* and the cases which followed it. Even if we assume that Olsen was not road-testing the car at the time of the accident, but was using it for his personal transportation, and even if we make the further assumption that the need to roadtest the car had terminated with the completion of repairs, the most that can be said is that Olsen deviated from the initial permission in terms of both time and purpose. Yet as we have already stated, such deviations are irrelevant.

Defendants also urge that Olsen's conduct constituted "theft or the like" and thus was excepted from the initial permission rule. In *Matits, supra,* we recognized this limitation. 33 *N. J.* at 496–497. But in the present case, we are unable to see how Olsen's conduct could be classified as "theft or the like." It should be remembered that Mrs. Heinrich's dealings with DeAngelis were carried out exclusively through Olsen. She bought the car from him and arranged for its servicing with him. Her daughter acquiesced in his use of the car on the Turnpike and to and from his home. Moreover, the final instructions from Mrs. Heinrich's son-in-law stipulated that the car not be returned until April 2, more than ten days after the accident. Under these circumstances, Olsen's conduct could hardly be called theft or anything akin to it.

Finally, we cannot accept the Appellate Division's reasoning that *Matits* does not apply where a dispute involves insurance carriers. We can see no basis for construing the omnibus clause of an owner's policy as denying coverage on that account. As we said above, the sole question before us is whether the owner's policy covers the event so as to provide protection for the injured claimant as well as those persons the policy otherwise covers. A distinction based on whether the dispute is between carriers or individuals would only lead to confusion and spawn unnecessary litigation. It

was these problems which we hoped to avoid in adopting the initial permission rule.

The judgment of the Appellate Division is reversed as to Travelers and judgment is entered for the plaintiff State Farm. Judgment is affirmed as to General.

*For affirmance as to General and reversal as to Travelers*— Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*Opposed*—None.