192 N.J. Super. 444 (1983)
471 A.2d 44
HENRY NICHOLAS, RICHARD KEEN, AN INFANT BY HIS GUARDIAN AD LITEM, VIRGINIA KEEN, AND VIRGINIA KEEN, INDIVIDUALLY, AND RICHARD D. BLUM, PLAINTIFFS-APPELLANTS AND CROSS-RESPONDENTS,
v.
SUGAR LO COMPANY, DAVID B. KLIGERMAN, ALAN E. KLIGERMAN, HENRY NICHOLAS AND SHIRLEY E. KLIGERMAN, DEFENDANTS-APPELLANTS AND CROSS-RESPONDENTS, AND NEWARK INSURANCE COMPANY AND ROYAL GLOBE INSURANCE COMPANY, DEFENDANTS-RESPONDENTS AND CROSS-APPELLANTS.
RICHARD D. BLUM, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT,
v.
CNA INC. AND CONTINENTAL CASUALTY COMPANY, DEFENDANTS-APPELLANTS AND CROSS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted December 12, 1983.
Decided December 23, 1983.
*446 Before Judges ARD, MORTON I. GREENBERG and TRAUTWEIN.
Horn, Kaplan, Goldberg & Gorny, for appellants and cross-respondents (Mark Soifer, on the brief).
Joseph D. O'Neill, for respondents and cross-appellants.
The opinion of the court was delivered by MORTON I. GREENBERG, J.A.D.
This matter is on appeal from a judgment of July 19, 1982 holding that respondent Newark Insurance Company (hereinafter called "Newark") was not responsible for insurance coverage for claims arising from a two-car automobile accident on March 10, 1978. Also on appeal is a judgment dated May 17, 1983 declaring the earlier judgment to be final as of the latter date.
One of the vehicles was owned by the Sugar Lo Company and was insured by Newark at the time of the accident.[1] Newark disclaimed coverage on the theory that the operator of the vehicle, David B. Kligerman, then 14 years old, was using it *447 without permission of its owner. Newark's contentions were accepted by the trial court, thereby relieving it of liability. Subsequently Continental Casualty Company (hereinafter called "Continental"), which had written an excess policy covering David's family, settled the damage claims arising from the accident.[2] Continental then took assignments of the claims against Newark by the injured parties and Continental's insureds so it could pursue them on appeal against Newark. Continental contends that David B. Kligerman, while not expressly authorized to use the vehicle on March 10, 1978, had initial permission for its use so that his subsequent use should be regarded as permissive and therefore Newark was responsible for insurance coverage pursuant to the policy it issued to Sugar Lo. Disposition of this appeal requires that both the extraordinary factual background of this case and its unusual procedural history be set forth at length.[3]
There is no question but that David drove with his parents' consent at times before the accident. When he was 12 or 13 years old he first operated a motor vehicle. This was at Bader Field, an airport in Atlantic City. At that time David sat on the lap of his father, Alan Kligerman, and steered his father's car. Subsequently David's parents, Alan and Shirley Kligerman, permitted him, under their supervision, to drive in the driveway of their home and at Bader Field. Shirley Kligerman on perhaps two occasions stood in the driveway overseeing his driving. She considered David to be a good driver but she did not permit him to drive on public roads.
Alan Kligerman also permitted David to drive his car in the driveway approximately two times under his supervision. Alan *448 Kligerman permitted David to drive at Bader Field between two and five times. At Bader Field, David started the car and drove it for approximately one-half mile, making U and K turns. David's father, like his mother, considered David to be a good driver. He complimented David on his driving ability, stating that David was a rather "gifted" driver. Nevertheless he specifically prohibited David from driving on public roads. Indeed, on March 9, 1978, the day prior to the accident, Alan expressly told David that he was not permitted to drive on such roads.
David disobeyed his parents' directives to stay off public roads. Prior to March 10, 1978 David had driven his mother's car, a 1973 Volvo wagon, registered to Sugar Lo Company, a partnership in which Alan and Shirley were partners, on public roads approximately 14 times. He took the car from the driveway at his home by using his father's key to the car which he obtained from his father's key chain. David never told his parents about these excursions. He was able to conceal what he had done by usually returning the car and keys to the spots from where they had been taken and by replacing the gasoline used during the trip.
On March 10, 1978, while his father was at work and his mother was in California, David took the Volvo. At approximately 1:00 p.m., while driving with Richard Keen and Richard Blum as passengers, he was involved in an accident on a public road with another vehicle operated by Henry Nicholas. Nicholas, Keen and Blum were injured. After this accident David's parents learned for the first time that he had been operating the vehicle on the highway.
The accident generated three damage actions. In one Richard D. Blum sought damages from David as the driver of the Volvo for David's negligence and from Sugar Lo, as its owner, on an agency basis. Blum also sought recovery from David's parents and Sugar Lo on a theory they were negligent in allowing David to have access to the automobile. Blum, obviously concerned about coverage, included a count charging that Newark was the *449 insurer covering the injuries. Richard Keen brought a negligence action against David and Alan Kligerman, Sugar Lo and Henry Nicholas without mentioning Newark in his complaint. Nicholas brought a similar negligence action against Sugar Lo and David Kligerman.[4]
On May 4, 1982, pursuant to his ruling made on the return date of an earlier motion, Judge Weinstein signed an order consolidating the three actions for purposes of trial but severing the counts against Newark. The judge also directed that depositions of the Kligermans, Blum and Keen be taken. At the depositions the parties stipulated that the case against Newark would be submitted to the judge for decision on a record consisting of depositions rather than on in-court evidence.
When the matter came on before Judge Weinstein on June 29, 1982 he gave an oral opinion deciding the case. He said that any person using the vehicle with Sugar Lo's permission would be covered, but that on the day of the accident David had neither express nor implied permission to use the vehicle. The judge indicated that there was no coverage within the initial permission doctrine announced in Matits v. Nationwide Mutual Ins. Co., 33 N.J. 488 (1960). On July 19, 1982 he signed an order in the consolidated actions stating that David B. Kligerman had not had permission to use the vehicle and that Newark would not be responsible for liability claims arising from the March 10, 1978 accident. The order did not dispose of the underlying damage claims nor was it certified as final under R. 4:42-2.
Following the order of July 19, 1982 a fourth action was started, this one by Blum against Continental. Its gravamen was that Continental had issued an excess policy covering the entire Kligerman family which, in the absence of underlying coverage, was available to satisfy Blum's claim. Continental and the other parties, except Newark, in December 1982 negotiated a settlement of all the damage claims of the injured *450 parties. As a portion of the settlement Continental took assignments of all the individual parties' rights against Newark including their right to appeal from the order of July 19, 1982.
Continental then moved to enter a final judgment in all four cases. Newark objected to this motion.[5] On May 17, 1983 Judge Williams signed an order specifying that the order of July 19, 1982 was not a final judgment and dismissing all four cases. The May 17, 1983 order further provided that the order of July 19, 1982 then became a final judgment. Continental has appealed from the order of July 19, 1982 and Newark has cross-appealed from the order of May 17, 1983.
We deal first with the cross-appeal. A judgment to be final and appealable without leave granted must be final as to all parties and all issues. Ibberson v. Clark, 182 N.J. Super. 300, 302 (App.Div. 1982); Delbridge v. Jann Holding Co., 164 N.J. Super. 506, 509 (App.Div. 1978). The order of July 19, 1982 clearly did not meet this test for it left unadjudicated the merits of the damage claims of the injured persons which continued to pend until subsequently settled. The four cases, including the three damage actions, were not terminated until entry of the May 17, 1983 order. Further Judge Weinstein did not certify as final the order of July 19, 1982 under R. 4:42-2. Therefore the order of May 17, 1983 was appropriately entered and Newark's appeal is not meritorious.
Continental on its appeal asserts that the trial court erred in granting summary judgment in Newark's favor because of the existence of fact questions. Substantively, it contends that Newark owed David coverage under the omnibus clause of its policy pursuant to the initial permission rule and the trial court erred in its holding that David Kligerman did not have implied consent to operate the vehicle.
*451 We deal first with the procedural appropriateness of this matter having been disposed of summarily. Initially we point out that the parties to the first three actions stipulated that the matter would be submitted to the court for decision on the basis of the depositions. Since this procedure was followed we have difficulty understanding how Continental may now assert the case was not appropriate for summary disposition. We recognize that Continental was not a party to the stipulation since the fourth action had not yet been filed when it was made. But it took an assignment of the rights from persons who were parties to it. It is bound by their stipulation. See James Talcott, Inc. v. H. Corenzwit and Co., 76 N.J. 305, 310 (1978).
In any event there were no factual disputes requiring resolution at trial. There was no conflict within the testimony of the Kligermans with respect to the circumstances pursuant to which David Kligerman operated the vehicle. Clearly he was permitted to operate the vehicle in limited situations but he did not have his parents' consent to operate the vehicle outside of their presence or to operate it on a public highway. This case did not require the judge to determine facts by settling credibility questions from conflicting testimony. Rather, he ascertained the legal consequences to be drawn from undisputed facts. The case was therefore appropriate for summary disposition. Miller v. United States Fidel. & Guar. Co., 127 N.J. Super. 37, 41 (App.Div. 1974). Accordingly we deal with Continental's substantive claims.
The Newark policy provided that insurance coverage extended to:
... any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission....
In Matits v. Nationwide Mutual Ins. Co., supra, 33 N.J. at 488, the court held that a person borrowing an automobile was covered within the terms of a policy similar to the one in this case even though the person having initial permission to take *452 the automobile went beyond the scope of the permission. The court stated that:
Accordingly, we hold that if a person is given permission to use a motor vehicle in the first instance, any subsequent use short of theft or the like while it remains in his possession, though not within the contemplation of the parties, is a permissive use within the terms of a standard omnibus clause in an automobile liability insurance policy. [Id. at 496-497.]
Continental's brief cites, in addition to Matits, other cases dealing with usage beyond that permitted in some initial permission. See, e.g., Motor Club Fire & Cas. Co. v. New Jersey Manufacturers Ins. Co., 73 N.J. 425 (1977), cert. den. 434 U.S. 923, 98 S.Ct. 402, 54 L.Ed.2d 281 (1977); Odolecki v. Hartford Acc. & Indem. Co., 55 N.J. 542 (1970). But such cases are dependent upon their own facts and therefore are of limited help in answering the question which controls this case: Did David B. Kligerman have initial permission that in any way related to his use of the vehicle on March 10, 1978?
From the facts in this case it is quite clear that he had no such permission. He had been expressly forbidden to use the vehicle. He obtained the vehicle for use on the highway on March 10, 1978 without the knowledge of his parents. David B. Kligerman has conceded the fact that he had violated his parents' directions. Further his earlier limited permissive uses at different places under his parents' supervision are so remote from the events of March 10, 1978 that the use on that day may not reasonably be regarded as being related to the earlier permission. Thus even though we liberally construe the omnibus clause [See Tooker v. Hartford Acc. and Indem. Co., 128 N.J. Super. 217, 223 (App.Div. 1974)], we cannot find coverage here. It follows, of course, from the facts that Judge Weinstein correctly held that David did not have his parents' implied consent to use the Volvo on the highway.
We do not suggest from our result that subsequent permission to use a vehicle could not be inferred from the granting of initial permission at different times. Thus it might well be reasonable to hold from a course of dealings between parties *453 that the continuous granting of permission to use a vehicle implied permission to use it without express consent on another occasion. But this is not that case.
The orders of July 19, 1982 and May 17, 1982 are affirmed.
NOTES
[1] The record makes reference to both Royal Globe Insurance Company and Newark Insurance Company as insurers. Insofar as we can ascertain the distinction makes no difference to this opinion. Thus since the policy involved seems to have been written by Newark, we only make reference to that company.
[2] It is not completely clear from the record whether the excess policy was written by CNA Inc. or Continental Casualty but it appears it was written by the latter. Thus we only make reference to Continental.
[3] Inasmuch as the case was resolved without trial, the facts are those developed on depositions and in the written record.
[4] There were amendments and other pleading which need not be described.
[5] The reason for the objection is clear. Obviously if the prior order of July 19, 1982 has been a final judgment, an appeal after the December 1982 settlement would have been untimely.