875 A.2d 943

LINDA R. FRENCH, PLAINTIFF–RESPONDENT AND THIRD PAR-
TY PLAINTIFF, v. ENRIQUE HERNANDEZ, ABC COMPANY
(1–5) AND JOHN DOES (1–5), DEFENDANTS, AND JOHN H.
DECKER AND DECKER LANDSCAPING, DEFENDANTS–RE-
SPONDENTS, AND HARLEYSVILLE INSURANCE COMPANY,
THIRD PARTY DEFENDANT–APPELLANT, AND NEW JER-
SEY MANUFACTURERS INSURANCE COMPANY, DEFEN-
DANT–INTERVENOR–RESPONDENT.

Argued February 28, 2005—Decided June 30, 2005.

*Lance J. Kalik,* argued the cause for appellant (*Riker, Danzig, Scherer, Hyland & Perretti,* attorneys; *Mr. Kalik* and *Ronald Z. Ahrens,* on the briefs).

*John J. Hopkins, III,* argued the cause for respondent Linda R. French.

*Edward Hoagland, Jr.,* argued the cause for respondents John H. Decker and Decker Landscaping.

*Patricia M. Reilly,* argued the cause for intervenor-respondent New Jersey Manufacturers Insurance Company (*Wolff, Helies, Duggan, Spaeth & Lucas,* attorneys; *John Peter Duggan,* of counsel).

Justice ALBIN delivered the opinion for the Court.

In this insurance coverage case, we must determine whether defendant Enrique Hernandez was a permissive user of his employer's truck when he caused an accident injuring plaintiff Linda French. On the day of the accident, a non-workday, Hernandez entered his employer's garage, took the truck, and drove it while intoxicated. Plaintiff contends that Hernandez had permission to use the vehicle. Based on that contention, plaintiff argues that

defendant Harleysville Insurance Company of New Jersey, the employer's insurance carrier, is responsible for covering her damages.

The trial court found Hernandez to be a permissive user of the vehicle and entered summary judgment in favor of plaintiff and against Harleysville. The Appellate Division affirmed that judgment. We now reverse.

## I.

The facts are based on deposition testimony and police reports and are essentially undisputed. Defendant John Decker is a full-time police officer. In the summer of 2000, Decker employed nineteen-year-old Enrique Hernandez in his side business, Decker Landscaping. During the course of his employment, Hernandez, an unlicensed driver, occasionally operated Decker's pickup truck, but only on private property and under Decker's direct supervision. Decker explained that when they were washing the truck, he would allow Hernandez to park it. Decker, however, never permitted Hernandez to drive the truck off the lot or to run a personal errand, and only Decker drove the truck on the public roads.

At the end of a workday, Decker locked the truck and landscaping equipment in a rented garage. Hernandez did not have keys to the pickup truck, though Decker could not recall whether Hernandez ever had a key to the garage. At a deposition, Decker confirmed that Hernandez was not authorized to operate the truck on the day of the accident and added conclusorily that Hernandez "knew he wasn't supposed to use the vehicle."

On the evening of Sunday August 13, 2000, Hernandez somehow gained access to the garage without breaking in, and then took the keys to Decker's truck.[1] While under the influence of alcohol, he

---

[1] The record does not resolve the question of how Hernandez obtained access to the garage.

drove the truck on public roadways, eventually crossing over a center line and colliding head-on into a vehicle driven by plaintiff Linda French, causing her to suffer significant physical injuries.

Following the accident, Hernandez was taken to a local hospital where he was treated for his injuries. A Dover Township police officer interviewed Hernandez at the hospital and prepared a report summarizing Hernandez's account:

> Mr. Hernandez stated that he consumed approximately five to six beers prior to driving the motor vehicle. He stated that he did not remember where he consumed the beverages. He stated that the vehicle he was driving, ([a] 1985 Dodge Pickup) was parked near where he had been drinking and that he decided to take it for a ride. He did not remember where he gained access to the keys. He said that they could have been in the truck. He stated that he was too drunk to remember who he had been drinking with, however, he remembered that when he started the vehicle, someone told him not to drive because he was too drunk. *He stated that the truck belonged to his employer, however, he did not have permission to use it.*
>
> [(Emphasis added).]

A blood test revealed that Hernandez's blood-alcohol content was .166%, considerably higher than the then legal limit of .10% necessary for a *per se* violation of *N.J.S.A.* 39:4–50(a). Hernandez was arrested for driving under the influence of alcohol and issued a number of motor vehicle summonses, including one for driving a vehicle without the owner's consent and another for driving without a license. After leaving the hospital, Hernandez disappeared, and is believed to have returned to his native Mexico.

Plaintiff filed a complaint alleging that defendants Hernandez, Decker, Decker Landscaping, and various John Doe companies and individuals (who purportedly served Hernandez alcohol) negligently caused her injuries. At an automobile arbitration proceeding, Hernandez was found 100% liable, and plaintiff and Decker 0% liable for the accident. Plaintiff was awarded $300,000 in damages exclusive of prejudgment interest.

The trial court granted summary judgment dismissing Decker from the suit, finding no evidence "that Hernandez was in any way undertaking to act as an agent for Mr. Decker," and, therefore, that *respondeat superior* did not apply. At a *de novo* hearing, the

trial court entered default judgment against Hernandez, and following a proof hearing, entered judgment in the amount of $595,416.44, including prejudgment interest.

The trial court then allowed plaintiff to amend her complaint to name as a defendant Harleysville Insurance Company of New Jersey, Decker's insurance carrier. The amendment permitted plaintiff to pursue recovering damages from Harleysville on the theory that Hernandez had implied permission to use a vehicle covered under the policy. The Harleysville insurance policy at issue provided coverage to Decker, the named insured, and to *"[a]nyone else while using with [his] permission a covered 'auto'* [he] own[ed], hire[d] or borrow[ed]. . . ."* (Emphasis added). New Jersey Manufacturers Insurance Company (NJM), which provided uninsured motorist coverage to plaintiff, intervened to "protect its interest." If Hernandez was not covered under the Harleysville policy and therefore was an uninsured driver, NJM would be required to indemnify plaintiff for her damages up to the limits of her uninsured motorist policy.

Plaintiff, NJM, and Harleysville filed cross-motions for summary judgment. The trial court found that because Decker allowed Hernandez to park the truck on private property earlier in the summer, the initial-permission rule was triggered, making Hernandez a permissive user of the truck weeks later at the time of the accident. Based on that finding, the court granted summary judgment in favor of plaintiff and NJM and against Harleysville. Harleysville appealed that ruling. Plaintiff cross-appealed, claiming that the trial court erroneously dismissed Decker from the case on the mistaken theory that Hernandez was not acting as his employer's agent.

The Appellate Division affirmed the entry of summary judgment against Harleysville, but not for the reasons articulated by the trial court. *French v. Hernandez,* 370 *N.J.Super.* 104, 108, 850 *A.2d* 585 (App.Div.2004). The panel rejected the trial court's application of the initial-permission rule to this case. *Id.* at 112, 850 *A.2d* 585. The panel noted that "[a]n essential element" of the

rule is that the driver "must be in continuous possession of the vehicle" from the time the owner gave permission for its initial use until the accident. *Ibid.* It found that Hernandez's possession of Decker's vehicle was not continuous, and did not fall within the initial-permission rule's general pattern: "a single trip in a vehicle by a permittee, who deviates from the scope of the permission for which the trip was authorized." *Id.* at 112, 117, 850 *A.*2d 585.

The panel then proceeded to analyze the facts under the implied permission doctrine. *Ibid.* Reasoning that "permitted use on prior occasions, coupled with other facts evidencing a course of dealings between the parties, can furnish the predicate to support implied permission on the subsequent occasion notwithstanding the absence of express permission on that occasion," the panel concluded that Hernandez was a permissive user. *Id.* at 116, 118, 850 *A.*2d 585.

Acknowledging the case to be "close," the panel further concluded that "Hernandez merely borrowed the truck with the intention to return it later" and that his conduct did not constitute "a theft or the like within the meaning of the initial permission rule." [2] *Id.* at 115, 120, 850 *A.*2d 585. Accordingly, it held that Hernandez's use of the truck was covered by Harleysville's policy and that plaintiff could collect her damages pursuant to that policy. *Id.* at 108, 119–21, 850 *A.*2d 585.

We granted Harleysville's petition for certification, 182 *N.J.* 142, 861 *A.*2d 846 (2004). We now reverse.

---

[2] The appellate panel also rejected Harleysville's argument that summary judgment was not validly entered against it because plaintiff never filed its amended complaint with the court. *French, supra,* 370 *N.J.Super.* at 120, 850 *A.*2d 585. It likewise rejected Harleysville's claim that the matter should be remanded for trial. *Id.* at 120–21, 850 *A.*2d 585. Finally, the panel rejected plaintiff's argument on cross-appeal that this Court had changed the law of *respondeat superior* in *Carter v. Reynolds,* 175 *N.J.* 402, 815 *A.*2d 460 (2003). *French, supra,* 370 *N.J.Super.* at 121–22, 850 *A.*2d 585. The issues raised before the Appellate Division concerning *respondeat superior* and plaintiff's alleged failure to file an amended complaint are not before us, and we do not address them in this opinion.

## II.

The Appellate Division properly posed the question that we must decide: whether Hernandez was a permissive user of his employer's pickup truck on the evening of the accident. Specifically, we must determine whether Decker gave Hernandez either express or implied permission to enter his business's garage and take the truck for a drive on a weekend evening when Hernandez was not working.

We first look to the scope of insurance coverage, which is defined in the omnibus clause of the Harleysville policy, as required by N.J.S.A. 39:6B–1.[3] The policy provided automobile liability coverage to Decker, as the named insured, and to "[a]nyone else while using with [his] permission a covered 'auto.'" Under the policy, Harleysville must provide coverage if Decker gave either express or implied permission to Hernandez to operate the truck.

Historically, we have given "an expansive view of the omnibus clause" because of the strong public interest in ensuring coverage to the insured and compensation to the victims of automobile accidents. *State Farm Mut. Auto. Ins. Co. v. Zurich Am. Ins. Co.*, 62 *N.J.* 155, 179–80, 299 *A.*2d 704 (1973) (Weintraub, C.J., concurring in part). Indeed, one of the principal purposes of requiring automobile owners to maintain liability insurance coverage is "to assure that persons who cause automobile accidents are able to answer financially to their innocent victims." *Matits v. Nationwide Mut. Ins. Co.*, 33 *N.J.* 488, 496, 166 *A.*2d 345 (1960); *see also N.J.S.A.* 39:6B–1. With those policy goals in mind, our

---

3 *N.J.S.A.* 39:6B–1(a) provides:

Every owner or registered owner of a motor vehicle registered or principally garaged in this State shall maintain motor vehicle liability insurance coverage, under provisions approved by the Commissioner of Banking and Insurance, insuring against loss resulting from liability imposed by law for bodily injury, death and property damage sustained by any person arising out of the ownership, maintenance, *operation or use* of a motor vehicle. . . . [(Emphasis added).]

courts have liberally construed automobile insurance policies, resolving all doubts in favor of coverage. *See Martusus v. Tartamosa,* 150 *N.J.* 148, 159, 696 *A.*2d 1 (1997). That does not mean, however, that an insurance policy can be stretched beyond all reason to fit a set of facts that fall beyond the reach of the omnibus clause.

█ The trial court ruled that the initial-permission rule governed the outcome of this case. We agree with the Appellate Division that applying the initial-permission rule to the few times Hernandez parked the truck in a private lot would not allow us to conclude that Hernandez had permission to drive the truck on the night of the accident. In *Matits, supra,* we set forth the contours of the initial-permission rule and held

> that if a person is given permission to use a motor vehicle in the first instance, any subsequent use short of theft or the like while it remains in his possession, though not within the contemplation of the parties, is a permissive use within the terms of a standard omnibus clause in an automobile liability insurance policy.
>
> [33 *N.J.* at 496–97, 166 *A.*2d 345.]

The rule provides that "[a]s long as the initial use of the vehicle is with the consent, express or implied, of the insured, any subsequent changes in the character or scope of the use … do not require the additional specific consent of the insured." *Verriest v. INA Underwriters Ins. Co.,* 142 *N.J.* 401, 413, 662 *A.*2d 967 (1995) (per curiam) (internal quotations omitted). Simply put, once an owner gives his vehicle's keys to another person for a drive, the courts ordinarily will find coverage, even if the driver deviates from the expected scope of use of the vehicle, unless the driver's later conduct amounts to a theft or the like of the vehicle. *See Butler v. Bonner & Barnewall, Inc.,* 56 *N.J.* 567, 574–75, 267 *A.*2d 527 (1970).

The initial-permission rule was adopted because it " 'best effectuate[d] the legislative policy of providing certain and maximum coverage.' " *Verriest, supra,* 142 *N.J.* at 412, 662 *A.*2d 967 (quoting *Matits, supra,* 33 *N.J.* at 496, 166 *A.*2d 345). We were concerned that adopting a narrower rule would "render coverage uncertain in many cases, foster litigation as to the existence or

extent of any alleged deviations, and ultimately inhibit achievement of the legislative goal." *Matits, supra,* 33 *N.J.* at 496, 166 *A.*2d 345.

■ However, as noted by the Appellate Division, one of the essential components of the initial-permission rule is "continuous possession of the vehicle" by the user following the grant of permission. *French, supra,* 370 *N.J.Super.* at 112, 850 *A.*2d 585. While supervised, Hernandez had parked his employer's truck several times on private property. It was not until weeks later, on a non-workday, that he entered the Decker Landscaping garage, took the truck without express permission, and crashed it into plaintiff's vehicle. In other words, Hernandez did not remain in continuous possession of the truck from the time of his initial limited use until the day of the accident.

Like the Appellate Division, we conclude that "[t]his case does not fall within the usual paradigm of the initial permission rule because of the break in" possession after the original limited authorization. *Id.* at 118, 850 *A.*2d 585. In particular, we agree with the panel that "earlier uses by Hernandez do not constitute initial permission" for the later use of the vehicle. *Ibid.* This Court has never extended the initial-permission rule to a case in which the user or his delegate did not remain in continuous possession of the vehicle. *See, e.g., Martusus, supra,* 150 *N.J.* at 151, 153–57, 696 *A.*2d 1 (applying initial-permission rule in case of continuous possession); *Verriest, supra,* 142 *N.J.* at 404–05, 411–15, 662 *A.*2d 967 (same); *State Farm Mut. Auto. Ins. Co. v. Travelers Ins. Co.,* 57 *N.J.* 174, 177–79, 270 *A.*2d 625 (1970) (per curiam) (same); *Butler, supra,* 56 *N.J.* at 570, 574–75, 267 *A.*2d 527 (same); *Odolecki v. Hartford Accid. & Indem. Co.,* 55 *N.J.* 542, 544, 550, 264 *A.*2d 38 (1970) (same); *Small v. Schuncke,* 42 *N.J.* 407, 410, 412–15, 201 *A.*2d 56 (1964) (same).

That the initial-permission rule does not apply to Hernandez's early instances of parking the truck does not end our inquiry into whether plaintiff may recover under the Harleysville policy. As the Appellate Division recognized, we still must decide whether

Decker gave Hernandez implied permission to use the pickup truck on the night of the accident. *French, supra,* 370 *N.J.Super.* at 118, 850 *A.*2d 585. Accordingly, we turn to the doctrine of implied permission.

Implied permission has been defined as "actual permission circumstantially proven." *State Farm, supra,* 62 *N.J.* at 167–68, 299 *A.*2d 704 (internal quotations omitted). It may arise from "a course of conduct or relationship between the parties in which there is mutual acquiescence or lack of objection signifying consent." *Id.* at 167, 299 *A.*2d 704 (internal quotations omitted). Implied permission customarily is proven by circumstantial evidence and requires the fact-finder to consider the surrounding circumstances in deciding whether the use of a vehicle was not contrary to the intent of its owner. *Id.* at 168, 299 *A.*2d 704. As mentioned, the relationship between the owner and user will be important. Not surprisingly, a finding of implied permission may be more likely when the vehicle's operator is a friend or employee of the owner. *See id.* at 179–80, 299 *A.*2d 704 (Weintraub, C.J., concurring in part) ("Weight must be given to the relationship of the parties and to the probabilities which that relationship would normally generate."). Equally significant will be a pattern of permitted use of the vehicle, which may give rise to an inference that the owner gave his consent to use on a subsequent occasion. Ultimately, the resolution of the issue will be fact-sensitive and depend on the totality of the circumstances. In analyzing whether Hernandez had implied permission to drive the truck, we give plaintiff the benefit of our canon of "liberal construction of [automobile] liability insurance [policies] to effect the broadest range of protection" to those who travel on and across roadways. *Id.* at 168, 299 *A.*2d 704.

A case similar to the present one is *Nicholas v. Sugar Lo Co.,* 192 *N.J.Super.* 444, 471 *A.*2d 44 (App.Div.1983), *certif. denied,* 96 *N.J.* 284, 475 *A.*2d 582 (1984), which we cited with approval in *Jaquez v. Nat'l Cont'l Ins. Co.,* 178 *N.J.* 88, 94–95, 835 *A.*2d 309 (2003). In *Nicholas, supra,* an insurance coverage case, the

Appellate Division had to determine whether a fourteen-year-old boy had his parents' implied permission to operate his father's car on the public roads. 192 *N.J.Super.* at 446–47, 471 *A.*2d 44. When he was twelve or thirteen, and while under his parents' direct supervision, the boy had driven his father's car at an airfield and in the family driveway on a number of occasions. *Id.* at 447–48, 471 *A.*2d 44. He was expressly told not to drive on the public roads. *Ibid.* Despite that parental admonition, the boy, many months later, gained access to his father's keys and secretly took the family's company car for drives on more than a dozen occasions with friends. *Id.* at 448, 471 *A.*2d 44. Eventually, he was involved in an accident, which gave rise to a lawsuit. *Ibid.*

Although referring to the initial-permission doctrine, the appellate panel in *Nicholas, supra,* essentially analyzed whether the boy had implied permission to drive the car he crashed. *See id.* at 452–53, 471 *A.*2d 44. The boy was not in continuous possession of the car from its initial permitted use until the accident. According to the panel, operating the car on an airfield and driveway under parental supervision did not translate into permission to drive unsupervised with friends on public roads. *Id.* at 448, 452, 471 *A.*2d 44. Significantly, the boy took the car without the knowledge of his parents and in disregard of his parent's express direction. *Id.* at 447–48, 452, 471 *A.*2d 44. Additionally, the boy's "earlier limited permissive uses at different places under his parents' supervision [were] so remote from the events of [the accident] that the use on that day [could] not reasonably be regarded as being related to the earlier permission." *Id.* at 452, 471 *A.*2d 44. The panel concluded that based on all the circumstances the boy "did not have his parents' implied consent to use the [car] on the highway." *Ibid.* The panel noted, however, that a different fact pattern might yield a different result:

> We do not suggest . . . that subsequent permission to use a vehicle could not be inferred from the granting of initial permission at different times. Thus it might well be reasonable to hold from a course of dealings between parties that the continuous granting of permission to use a vehicle implied permission to use it without express consent on another occasion.

[*Id.* at 452–53, 471 *A.*2d 44.]

We subscribe to that last observation made by the *Nicholas* court.

■ The parallels between *Nicholas, supra,* and the present case are significant. In both cases, the vehicle's owner had a relationship with the driver. In both, an unlicensed driver operated the vehicle under narrow circumstances, on private property, only under the owner's direct supervision, and relatively infrequently. Neither driver had continuous control over the vehicle from its initial use, and a substantial amount of time had lapsed between the authorized drives and subsequent forbidden excursions. Last, both drivers acknowledged that they were never given permission to drive on public roadways.

The Appellate Division found the present case to be "close." *French, supra,* 370 *N.J.Super.* at 115, 850 *A.*2d 585. We find that although the panel properly charted the law, the facts do not justify the conclusion that it reached. Even viewing, as we must, the evidence in the light most favorable to plaintiff, *Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 523, 666 *A.*2d 146 (1995), and liberally construing the Harleysville policy in favor of coverage, we cannot conclude that Hernandez had either express or implied permission to drive Decker's vehicle.

Hernandez was a short-term seasonal employee, who had parked the truck on a private lot while supervised on prior discrete occasions. Decker testified that he never gave Hernandez permission to take that truck on a non-workday onto the public roads for an excursion. Hernandez admitted to the police that he did not have permission to drive Decker's vehicle. Nothing in the record remotely suggests that Hernandez had implied permission to enter the Decker Landscaping garage on a Sunday, take the keys to the truck, and then operate it on public roads. We note that had Hernandez been given either express or implied permission to drive the truck that Sunday, then his use of the truck, "short of theft or the like[,] while it remain[ed] in his possession" would have provided the basis for coverage under the

initial-permission rule. *Matits, supra,* 33 *N.J.* at 496–97, 166 *A.*2d 345.

In viewing the totality of the circumstances, including both Decker's and Hernandez's assertions, we hold that no reasonable trier of fact could conclude that Hernandez had implied permission to drive the truck on the night of the accident. It is the absence of any evidence to support plaintiff's claim that compels us to reach this result. We, therefore, find that summary judgment should have been entered in favor of Harleysville and against plaintiff and NJM.

## III.

We conclude that even under our indulgent summary judgment standard, the record does not raise a genuine issue of material fact supporting plaintiff's claim. Accordingly, we reverse the Appellate Division and enter summary judgment in favor of Harleysville. We remand to the trial court for entry of a judgment consistent with this opinion.

*For reversal and remandment*—Chief Justice PORITZ and Justices LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—6.

*Opposed*—None.