876 A.2d 896

NICOLE FEREJOHN, PLAINTIFF–RESPONDENT, v. RYAN A. VACCARI, RAYMOND J. VACCARI AND LYDIA VACCARI, DE-FENDANTS–THIRD–PARTY PLAINTIFFS–RESPONDENTS, v. NEW JERSEY MANUFACTURERS INSURANCE COMPANY, THIRD–PARTY DEFENDANT–APPELLANT, AND ALLSTATE INSURANCE COMPANY, INTERVENOR–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued July 6, 2005—Decided July 21, 2005.

Before Judges STERN, SKILLMAN and SELTZER.[1]

*James D. Carton, IV,* argued the cause for appellant (*Carton Law Firm,* attorneys; *Mr. Carton,* of counsel and on the brief).

*Paul F. Schaaff, Jr.,* argued the cause for respondent Nicole Ferejohn (*Orlovsky, Moody, Schaaff,* attorneys; *Mr. Schaaff,* on the brief).

*Kenneth N. Lipstein* argued the cause for intervenor-respondent Allstate Insurance Company.

Respondents Ryan A. Vaccari, Raymond J. Vaccari and Lydia Vaccari did not file a brief.

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

This is an insurance coverage case.

On March 26, 1999, defendant Raymond Vaccari and his son, defendant Ryan Vaccari, purchased a 1967 Chevrolet Malibu. They each paid half the purchase price for the car, which was titled in the father's name. Defendants did not register the car because it needed repairs, including the installation of seat belts,

---

[1] Judge Seltzer did not hear oral argument. However, with the consent of the parties, he has participated in the decision.

before it could be operated on public streets. When the car was purchased, Ryan was sixteen years old and only held a learner's permit. Raymond prohibited Ryan from operating the car on the road until he was a licensed driver but gave him the keys so he could repair the car in the driveway to the family's home. Ryan kept those keys on his key chain. Raymond also allowed his son to operate the car in the driveway in connection with the repair work and to sit in the car with his friends and listen to music on the car radio.

On the evening of April 9, 1999, Ryan went to a party with several of his friends and became intoxicated. After the party, he and plaintiff returned to his house, where they sat in the Malibu drinking beer and listening to music. In the early morning hours of April 10, 1999, Ryan retrieved the keys to his mother's car, which was blocking the Malibu, and moved it out of the way. His parents were asleep inside the house at the time, unaware of what he was doing. Ryan then drove the Malibu out of the driveway into the street at a high rate of speed with plaintiff in the front passenger's seat. A short time later, he drove the car into a tree. Plaintiff suffered serious injuries in the accident.

Plaintiff brought this personal injury action against Ryan, Raymond and Raymond's wife, Lydia. At the time of the accident, Raymond and Lydia had a personal automobile liability policy issued by third-party defendant New Jersey Manufacturers Insurance Company (NJM). This policy covered the two cars driven by Raymond and Lydia. Although the 1967 Chevrolet Malibu was not listed under the policy on the date of Ryan's accident, the accident occurred within the thirty-day period allowed under the policy for adding an additional vehicle to the coverage.

When NJM disclaimed coverage, defendants filed a third-party complaint against NJM seeking a declaration that the automobile policy issued to them by NJM provided coverage for Ryan's accident. Allstate Insurance Company, which provided uninsured motorist coverage under an automobile liability policy issued to

plaintiff's parents, subsequently intervened in the action in support of the third-party complaint.

The case was brought before the trial court by cross-motions for summary judgment. The court concluded in an oral opinion that the NJM policy provided liability coverage to Ryan because he was a permissive user of the Malibu. The court reasoned that Raymond had given Ryan permission to repair and otherwise use the car in the Vaccaris' driveway, and that under *Verriest v. INA Underwriters Ins. Co.*, 142 *N.J.* 401, 662 *A.*2d 967 (1995), this permission made Ryan a permissive user of the car who was entitled to coverage under the automobile liability policy NJM had issued to his parents.

After entry of the summary judgment disposing of the coverage question, the underlying personal injury action was settled for $225,000. The settlement is contingent upon an affirmance of the order determining that NJM provides coverage to Ryan for the accident, thus preserving NJM's right to pursue this appeal. The consent judgment memorializing the settlement provides that if that order is reversed on appeal, plaintiff's uninsured motorist claim against Allstate will be arbitrated within sixty days.[2]

■ We conclude that, under *Verriest*, Ryan was a permissive user of the Malibu at the time of the accident that resulted in plaintiff's injuries, and therefore the NJM policy provides coverage to Ryan for his liability to plaintiff. Consequently, we affirm the summary judgment against NJM.

In *Verriest*, INA issued a business-automobile policy to a company owned by James H. that performed work on cars. 142 *N.J.* at 404–05, 662 *A.*2d 967. One of James H.'s employees was his cousin, Curley, who had recently moved to New Jersey. *Id.* at 404, 662 *A.*2d 967. James H. bought a car for Curley for $150 that Curley was supposed to repay. *Ibid.* After James H. bought the

---

[2] We were advised at oral argument that the Allstate policy provides $100,000 uninsured motorist coverage.

car, he immediately turned over the certificate of ownership and keys to Curley. *Ibid.* However, the car remained on James H.'s lot for the next two-and-a-half weeks because Curley lacked the money to repay James H. or to register the car. *Ibid.* During that period, Curley performed repair work on the car. *Ibid.* When James H. went out of state, leaving Curley in charge of his business, Curley removed two automobile dealer plates registered to a local automobile dealer from a locked drawer in James H.'s office and placed them on the car. Curley then went out in the car drinking with his friends, following which he was involved in a serious accident that resulted in the death of one person and serious injuries to another. *Id.* at 404–05, 662 *A.*2d 967. INA disclaimed coverage for Curley's liability for the accident on the ground that even though the car was a "covered auto" under the policy issued to James H., Curley was not a "permissive user" at the time of the accident.

■ The Supreme Court rejected INA's position and concluded that under the "initial permission" rule, Curley had James H.'s permission to drive the car at the time of the accident. Under this rule, "if a person is given permission to use a motor vehicle in the first instance, any subsequent use short of theft or the like while it remains in his possession, though not within the contemplation of the parties, is a permissive use within the terms of a standard omnibus clause in an automobile liability insurance policy." *Id.* at 411, 662 *A.*2d 967 (quoting *Matits v. Nationwide Mut. Ins. Co.*, 33 *N.J.* 488, 496–97, 166 *A.*2d 345 (1960)). The Court further explained:

> Under the initial permission rule only two questions must be answered to determine coverage. Was there permission to use the car initially? Did the subsequent use, while possession was retained, constitute "theft or the like?"
>
> [*Id.* at 412, 662 *A.*2d 967 (quoting *Small v. Schuncke*, 42 *N.J.* 407, 413, 201 *A.*2d 56 (1964)).]

With respect to the first question, the Court stated:

> "[T]he scope of the term 'use' is broad," covering a wide variety of activity other than operating a vehicle on a public roadway.

We note that after purchasing the vehicle James H. turned over the keys to Curley and observed him performing repairs on the vehicle. That conduct demonstrates that James H. implicitly granted Curley permission to work on the car while it remained on [James H.'s] lot, rendering Curley a permissive user of the Cadillac.

The Appellate Division, instead of focusing on whether the initial use of the Cadillac was permissive, addressed whether James H. had granted "permission to Curley to operate the vehicle on a public highway." However, because we have determined that James H. gave Curley permission to repair the vehicle, that line of inquiry is not determinative. The initial-permission rule "is not concerned with the scope of use for which permission is granted." "[A]s long as the initial use of the vehicle is with the consent, express or implied, of the insured, any subsequent changes in the character or scope of the use, ... do not require the additional specific consent of the insured." Thus, although James H. never gave Curley permission to operate the Cadillac on a public highway, Curley's operation of the car, unless it amounts to "theft or the like," remained a coverable permissive use.

We note that the initial-permission rule "contemplates a situation in which the subsequent use of a car may be inconsistent with and even frustrate the intentions and plans of the person granting permission." The breadth of the rule is designed to assure "that all persons wrongfully injured have financially responsible persons to look to for damages" because "a liability insurance contract is for the benefit of the public as well as for the benefit of the named or additional insured."

[*Id.* at 412–14, 662 *A.*2d 967 (citations omitted).]

*Accord Jaquez v. Nat'l Cont'l Ins. Co.,* 178 *N.J.* 88, 93–94, 98–99, 835 *A.*2d 309 (2003).

The Court also concluded that even though James H. had not authorized Curley to drive the car or use the dealer plates in his desk drawer, Curley's operation of the unregistered car did not constitute "theft or the like." *Id.* at 415, 835 *A.*2d 309. Noting that "James H. gave Curley the keys to the vehicle and permitted Curley to perform repairs while the vehicle remained on [his parking] lot," the Court concluded that "[a]lthough Curley's actions deviated from the initial permission granted by James H., they were not so inconsistent with the understanding of the parties to rise to the level of 'theft or the like.'" *Ibid.*

The initial permission that Raymond gave Ryan to use the Malibu is indistinguishable from the initial permission that James H. gave Curley to use the car that he had bought for him. As in *Verriest,* Raymond gave Ryan the keys to the car so he could perform repairs. As in *Verriest,* Raymond prohibited Ryan from

driving the car on public streets. Moreover, as in *Verriest*, the car was unregistered and thus could not be legally operated on the streets. And, as in *Verriest*, Ryan violated the restriction Raymond placed on his use of the car by operating it on the streets while in an intoxicated condition. However, as in *Verriest*, this violation of the restriction Raymond placed on Ryan's use of the car does not defeat coverage under the NJM policy because "the initial-permission rule 'contemplates a situation in which the subsequent use of a car may be inconsistent with and even frustrate the intentions and plans of the person granting permission.'" 142 *N.J.* at 414, 662 *A.*2d 967 (quoting *Small v. Schuncke, supra,* 42 *N.J.* at 414–15, 201 *A.*2d 56). Furthermore, there is no basis for concluding that Ryan's deviation from the permission Raymond gave him to use the car constituted "theft or the like," *id.* at 415, 662 *A.*2d 967, because Ryan paid half the purchase price for the car, Raymond gave him the keys to the car, permitted him to perform repairs and intended the car to be Ryan's car when he got his license.

Our conclusion that Ryan was a permissive user of the Malibu at the time of the accident is not affected by our Supreme Court's recent decision in *French v. Hernandez,* 184 *N.J.* 144, 875 *A.*2d 943 (2005). In that case, the Court reaffirmed the initial-permission rule as described in *Verriest. Id.* at 151–53, 875 *A.*2d 943. However, the Court concluded that the rule was inapplicable because "one of the essential components of the initial-permission rule is 'continuous possession of the vehicle' by the user following the grant of permission[,]" *id.* at 153, 875 *A.*2d 943 (citation omitted), and the user in *French* did not remain in continuous possession of the car, *id.* at 153, 875 *A.*2d 943. The Court also indicated that if the initial-permission rule does not apply because the user was not in continuous possession of the vehicle, coverage may still be found if the user had implied permission to use the vehicle at the time of the accident that is the subject of a claim. *Id.* at 153–54, 875 *A.*2d 943.

In this case, Ryan clearly had continuous possession of the Malibu, just as Curley had continuous possession of the car involved in *Verriest*, because his father gave him the keys to the car and allowed him to perform repairs and make other use of the car on a continuous basis. Therefore, the "continuous possession" component of the initial permission rule discussed in *French* does not negate Ryan's claim to coverage under the NJM policy.

In addition, we note that *French* indicates that, properly analyzed, our opinion in *Nicholas v. Sugar Lo Co.*, 192 *N.J.Super.* 444, 471 *A.*2d 44 (App.Div.1983), *certif. denied,* 96 *N.J.* 284, 475 *A.*2d 582 (1984), upon which NJM relies, did not involve the initial-permission rule because the user in that case was not in continuous possession of the car. *Id.* at 155, 875 *A.*2d 943. Rather, the issue in *Nicholas* was whether an unlicensed fourteen-year-old boy had "implied permission" to operate his father's car. *Id.* at 154–55, 875 *A.*2d 943. Because we have concluded that Ryan was in continuous possession of the Malibu, *Nicholas* has no applicability to this case.

█ Finally, Ryan's coverage for the accident is not defeated by the NJM policy exclusion for "[a]ny insured ... [u]sing a vehicle without a reasonable belief that that insured is entitled to do so." For the reasons previously expressed, we conclude that Ryan had express initial permission to use the Malibu. Therefore, his reasonable belief concerning his right to use the car is irrelevant. *See Rutgers Cas. Ins. Co. v. Collins,* 158 *N.J.* 542, 547–49, 551, 730 *A.*2d 833 (1999); *see also Martin v. Rutgers Cas. Ins. Co.,* 346 *N.J.Super.* 320, 325–26, 787 *A.*2d 948 (App.Div.2002).

Affirmed.