**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1501-24

CARRIE ALLEN and KA-SANDRA
ALLEN,

     Plaintiffs-Appellants,

v.

CHRISTIAN JONATHAN KIRCH
a/k/a JONATHAN CHRISTIAN and
KAITLYNN DOHENY a/k/a
KAITLYNN KIRCH,

     Defendants-Respondents.

_____

ST. PAUL PROTECTIVE
INSURANCE COMPANY,

     Plaintiff-Respondent,

v.

NEW JERSEY MANUFACTURERS
INSURANCE COMPANY,

     Defendant-Respondent,

and

KA-SANDRA ALLEN and CARRIE ALLEN,

     Defendants-Appellants,

and

CHRISTIAN JONATHAN KIRCH a/k/a JONATHAN CHRISTIAN,

     Defendant-Respondent.

_____

     Argued January 27, 2026 – Decided March 24, 2026

     Before Judges Gooden Brown and Torregrossa-O'Connor.

     On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket Nos. L-4456-22 and L-0970-23.

     William Stoltz argued the cause for appellants (Law Offices of Rosemarie Arnold, LLP, attorneys; Melissa Peace Tomaino and William Stoltz, on the briefs).

     John V. Mallon argued the cause for respondent New Jersey Manufacturers Insurance Company (Chasan Lamparello Mallon & Cappuzzo, PC, attorneys; John V. Mallon, of counsel and on the brief; Sarah E. Racine, on the brief).

PER CURIAM

     Carrie and Ka-Sandra Allen (the Allens) filed suit for injuries resulting

after defendant Christian Kirch, the driver of a vehicle owned by his sister-in-

law, defendant Katilynn Doheny,[1] rear-ended the Allens' vehicle on June 17, 2021. The Allens appeal from three January 9, 2025 Law Division orders in a related declaratory judgment action brought by St. Paul Protective Insurance Company, the insurer of the Allens' vehicle, to determine New Jersey Manufacturer's Insurance Company's (NJM) obligation, if any, to provide insurance coverage for Christian under Kaitlynn's policy. The trial court granted summary judgment in favor of NJM and denied the Allens' and St. Paul's respective motions for summary judgment,[2] finding NJM had no duty to defend or indemnify Christian, as he lacked actual or implied permission to use Kaitlynn's vehicle when the accident occurred. We affirm.

I.

A.

We summarize the relevant factual record "in the light most favorable to the non-moving party." Friedman v. Martinez, 242 N.J. 449, 472 (2020)

---

[1] Because Kaitlynn Doheny is also known as Kaitlynn Kirch, to avoid confusion and intending no disrespect, we use first names to distinguish the parties.

[2] As the Allens were plaintiffs in the initial personal injury action against Christian and Kaitlynn, St. Paul designated them, along with Christian and Kaitlynn, interested party defendants in its declaratory judgment action against NJM to secure NJM's coverage. The two actions were consolidated for discovery purposes in the declaratory action.

A-1501-24

(quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).  Here, the facts are largely undisputed.

On June 17, 2021, Kaitlynn, who resided elsewhere, drove to her then-estranged husband Sebastian Kirch's home so their children could visit with him. After parking her car on the street and entering the house, Kaitlynn placed her keys, her phone, and her purse "on the counter between the living room and the kitchen" because "that's usually where everyone . . . put[s] their keys or whatever they came in the house with."  Shortly after arriving, Kaitlynn laid down with her son to take a nap.

Sebastian later woke Kaitlynn and advised that Christian, Sebastian's brother who was living with Sebastian at the time, was involved in a collision while driving Kaitlynn's car.  Christian claimed he was driving Kaitlynn's car to "buy some stuff," which apparently included diapers for the children, when he hit the rear of the Allens' car, which was stopped at a yield sign.  The Allens were injured.

In a recorded statement, Christian indicated he called Kaitlynn before taking her car, but she did not answer her phone.  Christian, originally from Peru, explained:  "[I]n my country, if you borrow a car from a relative, it won't

A-1501-24

be an issue, but since I didn't know, so I just took her car because I needed to buy some stuff."

At deposition, Kaitlynn described her relationship with Christian as "friendly," and explained, "I wouldn't say we were close but, you know, we were nice to each other." Kaitlynn never resided with Christian, who moved in with Sebastian after the separation. Kaitlynn stated Christian never before drove her car, and she never gave him permission to drive. She recalled previously driving Christian to work "probably less than five times."

B.

After the Allens filed their complaint against Christian and Kaitlynn, NJM sent a letter declining coverage under Kaitlynn's policy for Christian's operation of Kaitlynn's vehicle. NJM cited the following policy language:

Exclusions

> A. We do not provide Liability Coverage for any insured:
>
> . . .
>
> 8. Using a vehicle without a reasonable belief that such insured is entitled to do so. This Exclusion (A.8.) does not apply to a family member using your covered auto which is owned by you.

5

The policy defines "insured" as "[a]ny person using 'your covered auto'" and "family member" as "a person related to you by blood, marriage, civil union under New Jersey law or adoption who is a resident of your household."

St. Paul then filed its declaratory judgment action against NJM, seeking declaration that NJM was required to insure Christian in the negligence action, with the Allens, Christian, and Kaitlynn named as interested party defendants.

After discovery was exchanged, the Allens and St. Paul both moved for summary judgment, arguing Christian was a permissive user under Kaitlynn's insurance policy, and therefore, NJM was required to defend and insure him. NJM cross-moved for summary judgment, arguing that it was not required to defend Christian or cover any loss resulting from his driving, relying upon the policy's exclusion.

The court heard oral argument. The Allens argued for coverage, emphasizing Kaitlynn had driven Christian as a passenger in the past and contending "it was reasonable for [Christian] to assume that he could borrow the car" because "he was going to use the vehicle in order to benefit [Kaitlynn's] children" by purchasing their diapers. The Allens further asserted, although Christian "didn't have explicit permission from [Kaitlynn] to use her car here, . . . she had never told him that he wasn't allowed to use the car."

A-1501-24

St. Paul echoed the Allens' arguments further asserting coverage was required because Christian, as Kaitlynn's brother-in-law, was a covered family member exempt from the policy's "reasonable belief" exclusion in Kaitlynn's policy.

NJM countered that Kaitlynn never permitted—expressly or impliedly—Christian to drive her car. NJM argued Kaitlynn's infrequent past instances of driving Christian as a passenger in her car could not constitute initial permission or prior continuous use by Christian or function as implied permission to operate the car at the time of the accident. NJM further contended Kaitlynn and Christian's relationship was undisputedly insufficient to suggest their ties through marriage alone conferred implicit authority for Christian to take and operate her car. Additionally, NJM argued Christian was not a resident family member under the policy, as he did not reside in Kaitlynn's household.

The court then entered three orders, denying the Allens' and St. Paul's motions, and granting NJM summary judgment. One written decision applicable collectively to the respective motions supplemented the orders. Central to each, the trial court found NJM was not required to defend or insure for damages resulting from the accident because Christian was not a covered user of

A-1501-24

Kaitlynn's vehicle, and Christian had no reasonable belief Kaitlynn permitted his use of her car on June 17.

The court found the "initial permission rule" inapplicable because the record confirmed Kaitlynn had never in the past granted Christian authorization to drive her car or established a regular arrangement by which Christian could infer standing permission. The court explained no evidence suggested Christian could have reasonably believed he had permission and rejected any claim that Christian's prior experience in Peru would create that reasonable impression in these circumstances. According to the court, Kaitlynn's leaving her keys on the counter in Sebastian's home where she did not reside, even together with her relationship through marriage with Christian and her prior transporting of him as a passenger, could not amount to implied permission. The court determined Christian was not a covered family member under the policy because "[Christian] resided at a different address and was Kaitlynn's brother-in-law."

II.

On appeal, the Allens argue the court erred in granting summary judgment for NJM and denying their and St. Paul's motions because they demonstrated Christian had implied permission to drive the vehicle mandating coverage under Kaitlynn's policy. Alternatively, the Allens argue material issues of fact existed

8

regarding the reasonableness of Christian's belief he was permitted to borrow his sister-in-law's vehicle, because he drove to purchase diapers for Kaitlynn's children, and, in Peru, "it is permissible to borrow a car from a relative."

A.

"We review de novo the trial court's grant of summary judgment, applying the same standard as the trial court." Abboud v. Nat'l Union Fire Ins., 450 N.J. Super. 400, 406 (App. Div. 2017) (citing Templo Fuente de Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). "To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman, 242 N.J. at 472 (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill, 142 N.J. at 540).

A-1501-24

"It is well-settled that we review a court's interpretation of an insurance contract de novo," and as such, "we afford no special deference to a 'trial court's interpretation of the law and legal consequences that flow from established facts.'" Motil v. Wausau Underwriters Ins. Co., 478 N.J. Super. 328, 336 (App. Div. 2024) (first quoting Katchen v. Gov't Emps. Ins. Co., 457 N.J. Super. 600, 604 (App. Div. 2019); then quoting Sealed Air Corp. v. Royal Indem. Co., 404 N.J. Super. 363, 374 (App. Div. 2008)).

"An insurance policy 'will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled.'" Ibid. (quoting Norman Int'l, Inc. v. Admiral Ins. Co., 251 N.J. 538, 552 (2022)). However, "[i]nsurance policy exclusions must be construed narrowly." Id. at 337 (quoting Merck & Co. v. Ace Am. Ins. Co., 475 N.J. Super. 420, 434 (App. Div. 2023)).

B.

In addressing the scope of Kaitlynn's policy and its possible extension to cover Christian in these circumstances, we begin by reviewing the policy's language. NJM's policy defines "insured" as "[a]ny person using 'your covered auto.'"

Automobile owners must "insur[e] against loss resulting from liability imposed by law for bodily injury, death and property damage sustained by any

A-1501-24

person arising out of the ownership, maintenance, operation <u>or use</u> of a motor vehicle." N.J.S.A. 39:6B-1 (emphasis added). The Supreme Court has clarified the statute's "use" clause requires coverage for only "permissive use" of an automobile.

The Court explained:

> [I]f a person is given permission to use a motor vehicle in the first instance, any subsequent use short of theft or the like while it remains in his possession, though not within the contemplation of the parties, is a permissive use within the terms of a standard omnibus clause in an automobile liability insurance policy.
>
> [<u>Proformance Ins. Co. v. Jones</u>, 185 N.J. 406, 412 (2005) (quoting <u>Matits v. Nationwide Mut. Ins. Co.</u>, 33 N.J. 488, 496-97 (1960)).]

Thus, the threshold permissive use inquiry evaluates whether "the initial use of the vehicle [wa]s with the consent, express or implied, of the insured." <u>Atl. States Grp. v. Skovron</u>, 383 N.J. Super. 423, 428 (App. Div. 2006) (quoting <u>French v. Hernandez</u>, 184 N.J. 144, 152 (2005)).

Pertinent here, implied permission is "actual permission circumstantially proven." <u>French</u>, 184 N.J. at 154 (quoting <u>State Farm Mut. Auto. Ins. Co. v. Zurich Am. Ins. Co.</u>, 62 N.J. 155, 167-68 (1973)). Its existence is "fact-sensitive," and may arise from "a course of conduct or relationship between the parties in which there is mutual acquiescence or lack of objection signifying

11

consent." Ibid. This can be shown by "a pattern of permitted use of the vehicle, which may give rise to an inference that the owner gave his consent to use on a subsequent occasion." Id. at 154, 156-57 (holding a seasonal employee with permission to drive a work truck "on a private lot while supervised on prior discrete occasions," did not have implied permission to "enter the [business's] garage on a Sunday, take the keys to the truck, and then operate it on public roads"); see also Nicholas v. Sugar Lo Co., 192 N.J. Super. 444, 448 (App. Div. 1983) (noting a teenager was not in "continuous" possession of a car from its initial permitted use until the accident because operating the car on an airfield and a driveway under parental supervision did not translate into permission to drive unsupervised with friends on public roads).

Against this backdrop, we have reviewed the record and conclude, as did the trial court, any damage caused by Christian's use of the vehicle was not covered under Kaitlynn's policy. First, we are satisfied the record contains no suggestion of Christian's prior use of Kaitlynn's vehicle, authorized or otherwise. Instead, the evidence shows only that she drove him to work less than five times. Accordingly, any argument Christian drove the vehicle subsequent to some prior express authorization or in continuation of initially authorized use belies the record and fails from the outset.

Next, we conclude no confluence of events on the day of the accident suggests Christian had implied permission to use the car. Christian took Kaitlynn's keys from the counter in Sebastian's house without authorization. There is no evidence Kaitlynn consented or asked Christian to take her car. To the contrary, Christian admittedly attempted to call Kaitlynn to ask permission to use her car, but he never reached her. Yet, he took the car anyway. We are satisfied no jury could find this was implied permission.

Finally, we address and reject the Allens' claims that Christian held a reasonable belief he was permitted to drive the car or, alternatively, that he was a family member covered by the policy. Again, the policy's language excludes from coverage a user "without a reasonable belief" of an "entitle[ment] to do so," but exempts from the coverage bar a resident "family member" using the "covered auto."

We readily determine the policy's "family member" carve-out does not apply because the record did not support a possible finding Chrisitan was a "resident" of Kaitlynn's "household." Two significant factors assist in determining whether an individual shared the same household as an insured— sharing a "substantially integrated family relationship" and "inten[t] to return to the insured's household." Gibson v. Callaghan, 158 N.J. 662, 673-75 (1999).

13

The record lacks any evidence to indicate Christian and Kaitlynn shared an integrated relationship. No evidence suggests their lives were interdependent or comingled in any significant manner. Most critically, Christian did not reside in the same household with Kaitlynn. Christian resided with his brother, from whom Kaitlynn was separated and living apart on June 17. Thus, the "family member" exception does not apply here.

As to whether Christian held a reasonable belief Kaitlynn authorized Christian to drive her car, we have already rejected any argument that Christian was given express or implied permission. We likewise determine the record does not support a viable claim Christian possessed the "reasonable belief" he was free to take and operate Kaitlynn's car that day.

When an insurance policy contains "reasonable belief" language, "we must find that [the insurer] intended a more liberal effect, favorable to coverage, by the 'reasonably believed' language than that which would obtain as to the standard language requiring permission." State Farm Mut. Auto. Ins. Co., 62 N.J. at 169. This is because, "the 'reasonable belief' language in an insurance policy was originally designed to place an outer limit on those circumstances in which an automobile liability insurance policy provides coverage to an insured

14                                                                    A-1501-24

for non[-]owned vehicles." Rutgers Cas. Ins. Co. v. Collins, 158 N.J. 542, 547-48 (1999).

Reasonableness, in the context of automobile insurance coverage, concerns "the state of mind of the claimed permittee" and considers an individual's "age, personality and social milieu, subject to such attendant influences on his judgment and mind as may be credibly discerned from the proofs." State Farm Mut. Auto. Ins. Co., 62 N.J. at 171-72 (noting that the reasonable belief standard is different than the "reasonable man" standard). We evaluate whether the user in operating another's vehicle "in fact believe[d], with reason, that the owner was thus willing, whether or not the fact-finder would conclude from the circumstances that the owner was actually willing." Id. at 171.

Although the Allens argue Christian's belief is a disputed issue of fact, the evidence in the record regarding his belief was largely undisputed and considered by the trial court in its written opinion. The trial court was aware Christian claimed, in Peru, members of families freely use each other's vehicles and because he used the car to purchase diapers for her children. It found any misapprehension on Christian's part unreasonable in these circumstances.

We agree. Without more, Christian's naked statements are fatally undermined by the record, including his undisputedly calling Kaitlynn to ask her permission before taking the car.[3] Thus, NJM fairly denied coverage for damages resulting from Christian's driving, and summary judgment was properly entered in favor of NJM.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Hanley*

Clerk of the Appellate Division

---

[3] We note, the parties indicated an inability to contact Christian "to get his testimony" concerning "his belief," as he now allegedly lives in Peru. Notably, default was entered against him in the negligence action based on his failure to plead.